UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

                                                       Civil No. 02-CV-72004-DT

CMS ENERGY SECURITIES                    HON. GEORGE CARAM STEEH
    LITIGATION,

_____/

OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
AMENDED MOTION FOR CLASS CERTIFICATION (DOCUMENT NO. 233)

INTRODUCTION

Before the court is plaintiffs' amended[1] motion for certification of a class (the "Class") made under Fed. R. Civ. P. 23(a) and 23(b)(3). In it, plaintiffs request certification of lead plaintiffs Andover Brokerage, LLC and Herbert Steiger, and additional plaintiffs Morris L. Cook; Louisiana School Employees' Retirement System; and Heidi and Paul R. Kirschke as Class representatives, and designation of plaintiffs' current co-lead counsel Entwistle & Cappucci LLP/ Milberg Weiss Bershad & Schulman LLP as co-lead counsel for the Class.[2]

---

[1]As this amended motion, filed July 20, 2005, supercedes plaintiffs' original motion made on April 15, 2005, the court hereby DISMISSES plaintiffs' first motion for class certification (Document No. 216).

[2]The court DENIES defendants' *ex parte* motion to strike certain portions of plaintiffs' class certification reply brief and GRANTS defendants' motion for leave to file a sur-reply. The court acknowledges defendants' objections to plaintiffs' reply brief exhibits and reserves ruling on whether they will be admissible at trial until a later date when the court can hear arguments, and reiterates its assurance to defendant that plaintiffs could not rely on an assertion of waiver at that juncture. Additionally, the court GRANTS plaintiffs' later- filed motion to supplement the record in support of plaintiffs' motion for class certification.

BACKGROUND

As discussed in several opinions already issued by the court in this litigation, plaintiffs' securities fraud claims in this case rely on the fraud-on-the-market theory and stem from allegedly false and misleading statements and omissions made by CMS. Specifically, plaintiffs allege that defendant CMS, through its Marketing, Services, and Trading division ("CMS MS&T"), engaged in round trip trading, where at the same time MS&T bought energy from another entity, it was selling an equal amount of energy to that entity.  Plaintiffs assert that these simultaneous transactions served only to boost CMS revenues, were fraudulent, and improperly elevated CMS to the top tier of energy companies, thus artificially inflating the trading price of CMS stock.

Plaintiffs allege that when news of this scheme became public on Thursday, May 9, and Friday, May 10, 2002, the price of CMS stock began to decline, leading to large financial losses for investors. The New York Stock Exchange in fact delayed the start to trading of CMS stock when the market opened on Monday, May 13, 2002.  Trading resumed later in the day and CMS stock lost 22% of its value by the time the market closed that day.  Between May 17, the date the first complaint was filed in this case, and September 22, 2002, 18 separate securities fraud lawsuits were lodged against CMS/defendants.

Plaintiffs propose certification of the following Class:

All persons who purchased common stock and/or 8.75% Adjustable Convertible Trust Securities of CMS Energy Corporation ("CMS") during the period of October 25, 2000 through and including March 31, 2003 and who were damaged thereby. Excluded from the class are current and previously-named Defendants, the officers and directors of CMS at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which

current and previously-named Defendants have or had a controlling interest.

The court's consideration of the propriety of plaintiffs' proposed Class, and its determination in that regard, is set forth below.

## ANALYSIS

As required by the statutory framework of Fed. R. Civ. P. 23, plaintiffs' motion for class certification first asserts that the requirements of Fed. R. Civ. P. 23(a) are satisfied, and then moves into the reasons plaintiffs assert support a finding that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(3).

In their response, defendants[3] specifically argue that: 1) the class period should end on a date in May, 2002, rather than the plaintiffs' proposed date of March 31, 2003; 2) day traders[4], short sellers, and members of the class in the companion ERISA litigation should be excluded[5]; and 3) purchasers of CMS preferred securities "8.75% Adjustable Convertible Trust Securities" ("ACTS") should not be added to the Class at this time.

A. Prerequisites to a Class Action

This section of the rule sets forth that

---

[3] A response was filed on behalf of CMS in which individual defendants Alan M. Wright, William V. Parfet, Preston D. Hooper, and David W. Joos joined.

[4] Defendants refer to traders such as Andover as "day traders, " while plaintiffs refer to them as "short term traders." In this opinion and order they will be referred to as day traders, to avoid confusion with a group of traders both parties refer to as short sellers.

[5] Preliminary settlement approval was granted in the ERISA litigation on March 23, 2006.

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

23(a)(1): Numerosity

Plaintiffs assert that the class in this litigation consists of "at least thousands of members" and claim that numerosity is a given in class actions "involving nationally traded securities," citing Ballan v. UpJphn Co., 159 F.R.D. 473, 479 (W.D. Mich. 1994) (quoting Ziderman v. Ray McDermott & Co., 651 F.2d 1030, 1039 (5th Cir. 1981)). Plaintiffs cite additional class action cases, listing the number of plaintiffs in each, the smallest group being 38. Hendricks-Robinson v. Excel Corp., 164 F.R.D. 667, 671 (C.D. Ill. 1996). Plaintiffs further assert that the proposed Class members are widely dispersed, making joinder further impracticable. They rely on Eisenberg v. Gagnon, 766 F.2d 770, 785-86 (3rd Cir. 1985) in which the court found 90 geographically dispersed plaintiffs sufficiently numerous to approve a class. The court agrees that the proposed Class is sufficiently numerous to satisfy this requirement, as defendants do not dispute that it may number in the thousands.

23(a)(2): Commonality

Plaintiffs contend that all members of the potential Class use the same theory for recovery; i.e. fraud-on-the-market, and seek to prove that the CMS stock price was artificially inflated through defendants' misrepresentations and omissions. Plaintiffs further assert that the members of the Class need only one common question, citing to

4

Sprague v. Gen. Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998) (citing American Med. Sys., Inc., 75 F.3d 1069, 1080 (6th Cir.1996)). Plaintiffs assert five specific issues all proposed Class members have in common in this litigation, e.g. "[w]hether Defendants' failure to disclose CMS' massive round-trip trades rendered their public statement materially false and misleading;" and the court agrees that there are clearly many questions common to the proposed Class. Defendants do not actively dispute plaintiffs' assertion that the prospective Class members have common questions. Plaintiffs have persuaded the court that common issues, the resolution of which would advance the litigation, exist among all prospective Class plaintiffs.

23(a)(3): Typicality

The court also agrees with plaintiffs, who rely on Little Caesar Enterprises, Inc. v. Smith, 172 F.R.D. 236, 242-43 (E.D. Mich 1997) (citing Appleyard v. Wallace, 754 F.2d 955, 958 (11 Cir. 1985)), that this requirement is met because all claims arguably arise out of the same alleged conduct and are based on the same legal theory.[6]

23(a)(4): Adequacy of Class Representatives

This section of the rule has two requirements: first, representatives must have common interests with the unnamed Class members: second, they must vigorously prosecute, using qualified counsel, the interests of the Class. See, e.g., In re American Med. Sys., Inc., 75 F.3d 1069, 1083 (6th Cir. 1996).

---

[6]As seen below, the court excludes ACTS purchasers from the Class, while it provisionally keeps short sellers in the Class, and enumerates its reasons in its 23(b)(3) analysis. However, as defendants point out and the court agrees, these purchasers might also violate the typicality requirement.

5

Plaintiffs assert, and defendants do not attack, their ability to vigorously prosecute the case via qualified counsel. The court agrees that the proposed representatives and their counsel will vigorously pursue the case as evidenced by their past conduct in this case.

Plaintiffs assert that the proposed Class representatives have the same interests as absent Class members, in seeking to prove the defendants artificially inflated the price of CMS stock by making material misrepresentations and omissions. Defendants attack the appropriateness of naming Andover, a day trader, and the Kirschkes, short sellers and purchasers of ACTS, because they and all others like them should be excluded from the Class. Defendants specifically attack the use of Heidi Kirschke as a representative because they allege she did not suffer any loss, has not been educated as to the role of a class representative, and does not know whether she wants to be a class representative.[7] (Defendant CMS Energy Corporation's Brief In Opposition To Plaintiffs' Amended Motion For Class Certification, p. 19, citing Heidi Kirschke's deposition transcript at 122:1-125:16 and 32:24-34:4.) The appropriateness of naming Andover and the Kirschkes as Class representatives will be discussed below when the court considers whether day traders, short sellers, and purchasers of ACTS belong in the Class. The court notes that defendants do not contest the use of Mr. Steiger, Mr. Cook, or the Louisiana School Employees' Retirement System as Class representatives.

---

[7] However, as acknowledged at oral argument, Mr. and Mrs. Kirschke held/hold their stock jointly, and no such attack was made on the propriety of Mr. Kirschke serving as a class representative.

6

Accordingly, the court is persuaded that at least three of the named plaintiffs and all of plaintiffs' counsel are adequate to serve as Class representatives and Class counsel.

B. Class Action Maintainable

After demonstrating fulfillment of the requirements of Fed. R. Civ. P. 23(a), plaintiffs request certification under Fed. R. Civ. P. 23(b)(3).

Fed. R. Civ. P. 23(b)(3) states that after the 23(a) requirements have been satisfied, a class action may be maintained if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." For the following reasons the court agrees that certification of a Class, although not encompassing the entire proposed class, is appropriate under 23(b)(3).

Plaintiffs rely on case law that says "[p]redominance is a test readily met in certain cases alleging...securities fraud..." Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 625 (1997). Plaintiffs further contend that a class action is not simply the best method but also the only method to resolve the dispute because the individual recovery will be small. Plaintiffs cite to Carroll v. United Compucred Collection, Inc., 399 F.3d 620, 625-26 (6th Cir. 2005) (citing Amchem, 521 U.S. at 617) in making this argument.

Defendants argue for an earlier end to the Class period than that requested by plaintiffs, and the exclusion of several categories of stock purchasers.[8] These objections are enumerated and discussed in sequence, below.

1) Class closing date

Defendants first argue that the Class period should end on a date in May 2002 instead of March 31, 2003, as requested by the plaintiffs. Defendants assert that curative information was released on May 9 and 10, 2002 and that, as recognized by plaintiffs' motion for judgment on the pleadings, this information had an immediate impact on the stock's market price. Defendants rely in part on In re Ribozyme Pharm., Inc. Sec. Litig., 205 F.R.D. 572, 579 (D. Colo. 2001) which held that the class period ends "when curative information is publically announced or otherwise effectively disseminated to the market." Defendants claim that the information made public on May 9, and 10, 2002 made further reliance on their financial statements unreasonable. Defendants note that the NYSE took the unusual step of suspending trading on May 13, 2002 and assert that proves the disclosure was significant and further reliance on the market was unreasonable, again citing Ribozyme, 205 F.R.D. at 581.

Plaintiffs, in their reply, assert that not all the necessary disclosures were made in order to completely cure the market until the March 31, 2003 disclosure of severe internal control problems. They cite to this court's ruling on defendants' motion to

---

[8]Defendants do not specify which prong of the analysis is affected by the resolution of these issues. Because the plaintiffs rely on the fraud-on-the-market theory, and the court agrees with defendants' assertion that certain of these categories of stockholders cannot be said to have relied on the market in the same way as the remainder of the Class, the court will analyze it under the 23(b)(3) predominance requirement.

8

dismiss, in which this court sustained plaintiffs' complaint alleging violations occurring *through* March 31, 2003. Plaintiffs further argue that when the parties disagree about the Class end date all "doubts...should be resolved in favor of extending the class period," citing In re Data Access Sys. Sec. Litig., 103 F.R.D. 130, 143 (D.N.J. 1984).

The court notes that it was not presented with these arguments in ruling on the motion to dismiss, nor was it ruling on an appropriate class period at that point in the litigation. In any event, the court now finds an appropriate close date for the class period to be May 17, 2002, the day the first complaint was filed in this litigation. While plaintiffs may be correct that the court should err on the side of a longer class period in order to protect plaintiffs, the court finds no support for the theory that plaintiffs should be added to the Class *after the first complaint was filed* and finds persuasive defendants' argument that purchases of stock made after May 17, 2002 could be disguised purchases of a lawsuit. The court also agrees with defendants' assertion at oral argument, that later disclosures regarding internal management control problems are not appropriately part of a securities litigation claim. In supporting this argument defendants persuasively cite to Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 477 (1977), which supports a finding that such allegations of corporate mismanagement do not come within the ambit of securities fraud. Accordingly, such disclosures, including those made on March 31, 2003, would not affect the determination of a closing date for the class period.

2) Day Traders

Defendants next argue that day traders should be excluded from the Class because they do not trade in reliance on the market's integrity. Therefore, they assert,

their claims are vulnerable to defenses not available against other class members, citing In re Sonus Networks, Inc., Sec. Litig., 229 F.R.D. 339, 342 (D. Mass. 2005). Defendants contend that the presence of day traders in the Class violates the 23(b) requirement of predominance because proof of reliance plays a "crucial role in a court's decision as to whether common questions will predominate." In re GenesisIntermedia, Inc. Sec. Litig., 232 F.R.D. 321, 332 (D. Minn. 2005).

The court agrees with plaintiffs that day traders are adequate class members and representatives. This court's prior decision in November, 2002, granting Andover Brokerage and Herbert Steiger's motion for appointment as lead plaintiffs and approving lead plaintiffs' selection of lead and liaison counsel, reasoned that a plaintiff who bought and sold in short order is similar enough to one who bought for the long term to be included in the class. Consistent with the reasoning in that prior order, Andover can serve as a representative plaintiff.

3) Short Sellers

Defendants next seek to exclude short sellers from the Class, alleging that short sellers profit by *decreases* in the market price and therefore cannot recover under the plaintiffs' fraud-on-the-market theory.

The parties do not disagree about the definition of a "short seller" of securities. To borrow the apt description provided by the Third Circuit's Zlotnick case:

> Short selling is accomplished by selling stock which the investor does not yet own; normally this is done by borrowing shares from a broker at an agreed upon fee or rate of interest. At this point the investor's commitment to the buyer of the stock is complete; the buyer has his shares and the short seller his purchase price. The short seller is obligated, however, to buy an equivalent number of shares in order to return the borrowed shares. In theory, the short seller makes this covering

> purchase using the funds he received from selling the borrowed stock. Herein lies the short seller's potential for profit: if the price of the stock declines after the short sale, he does not need all the funds to make his covering purchase; the short seller then pockets the difference. On the other hand, there is no limit to the short seller's potential loss: if the price of the stock rises, so too does the short seller's loss, and since there is no cap to a stock's price, there is no limitation on the short seller's risk. There is no time limit on this obligation to cover. 'Selling short,' therefore, actually involves two separate transactions: the short sale itself and the subsequent covering purchase.

Zlotnick v. TIE Communications, 836 F.2d 818, 820 (3rd Cir. 1988). Concerning the Zlotnick case, plaintiffs argue that its decision that short sellers are not entitled to the presumption of reliance on the integrity of the market price to which common stockholders are entitled has been "almost unanimously rejected," quoting from In re Initial Public Offering Securities Litigation, 227 F.R.D. 65, 108-09 (S.D.N.Y. 2004). Plaintiffs cite to the cases of In re WorldCom, Inc. Sec. Litig., 219 F.R.D. 267 (S.D.N.Y. 2003) and IPO in making their general argument that short sellers are appropriately part of the Class, because the covering purchases made by such short sellers were subjected to an artificially inflated price.

Defendants make a general objection to the inclusion of any short sellers in the Class, without giving any information (or even speculation) about the *number* that might be included in the class, or the circumstances surrounding their short sales and covering purchases. Defendants argue that Judge Keeton in Massachusetts recently excluded short sellers in a blanket manner because they were "not entitled to the 'fraud on the market' presumption of reliance." In re Polymedica Corp. Securities Litigation, 224 F.R.D. 27, 44 (D. Mass. 2004). However, defendants' arguments in that case included the contention that "individual issues of reliance nevertheless will predominate

11

during 2001 because of the existence of a *large number* of short sellers," who presumably would each be required to offer evidence on whether or not they had relied on the integrity of the market price. This convinced the judge that if he included the short sellers, individual issues of reliance could predominate, and weigh against the certification of a class. Id. at 43. Judge Keeton specifically discussed the alleged number of short sellers in the wake of his holding:

> [t]his is not to say that defendants are incorrect in suggesting that the presence of a few short sellers would not bar class certification whereas the presence of many short sellers would. At some point, a difference in degree does become a difference in kind. Indeed, some courts have certified classes that include a few short sellers. See Weikel v. Tower Semiconduction Ltd., 183 F.R.D. 377 (D.N.J. 1998). I believe the latter alternative is more appropriate only because, in the circumstances of this case, it does not require a potentially arbitrary decision by this court.

Id. at 44.

The court notes that similar considerations were taken into account in the Ganesh case, on which defendants also rely. In that matter, the court first considered the standing of short sellers, and reasoned:

> "Longs" and "shorts"–that is, those who invest in stock with the expectation that its price will either rise or fall–have an identical interest in ensuring that the market price that they perceive when deciding whether to invest is not artificially influenced by material misrepresentations or omissions that they have no way of detecting. The interests of the two groups are aligned in this way, subject only to some potential variation in how their damages would be calculated in the event that 10b-5 liability were otherwise established.

Ganesh, L.L.C. v. Computer Learning Centers, Inc., 183 F.R.D. 487, 490-91 (E.D. Va. 1998). Although the court found short sellers had standing, consistent with the Third Circuit's holding in Zlotnick, the Ganesh court declined to certify the class requested by plaintiffs, giving them leave to amend their motion for class certification, because

12

defendants asserted that *six million shares* had been sold short in April 1998, "a number that exceeded the company's actual float." Ganesh, 183 F.R.D. at 491. For that reason, the court determined that having to examine each short seller's proof of individual reliance and damages would present a managerial burden that would "overwhelm any common questions of law or fact and eviscerate the efficiencies that classwide adjudication might otherwise afford." Id.

The cited reasoning of both the Polymedica and Ganesh courts is persuasive here, and drives the opposite result reached in those cases. Although defendants relied on these cases for their argument that short sellers should be excluded, this court is convinced that without any information concerning the number or activities of such short sellers, categorical exclusion at this juncture would be arbitrary. Having carefully considered all of the cases cited by the parties, it seems possible to the undersigned that a covering purchase by a short seller could be made in reliance on the integrity of the market price. However, without any evidence on this point, or any information about whether managing and considering evidence would be overwhelming in the context of this litigation, the court will decline to exclude "short sellers" from the Class at this juncture.

4) Members of the ERISA class

Defendants also claim members of the ERISA class should be excluded from the proposed Class. Defendants assert that the theories for recovery in the two cases are incompatible with each other. The securities case is premised on reliance on the market price, while the ERISA case is premised on the improper conduct of plan fiduciaries who knew of the round trip trading, yet purchased and held CMS stock for

13

the subject plans.  Defendants assert that allowing ERISA class members to be part of this Class would lead to double recovery.

Plaintiffs answer by stating that recovery under both statutes can be pursued, even if the underlying facts are the same, so long as the alleged wrongs and theories of liability are different.  United States ex rel. Augustine v. Century Health Servs., Inc., 289 F.3d 409, 417 (6th Cir. 2002).  They assert that the potential for double recovery is not an issue because the court can offset the second award by the earlier award.  Sun Ship, Inc. v. Pennsylvania, 477 U.S. 722, 725 n.8 (1980).

The court is far from convinced that recovery on the claims made in the ERISA litigation would not encompass all potential recovery in this litigation on a per share basis.  However, because there are obvious differences among the *claims and parties* in the two cases, and because the court agrees that offset is another potential method to resolve this problem, the court will leave resolution of this rather ill-defined issue to a later point in the litigation and decline to exclude the ERISA class pending further factual development.

5) Purchasers of the 8.75% Adjustable Convertible Trust Securities ("ACTS")

Finally, defendants also seek to exclude purchasers of CMS 8.75% Adjustable Convertible Trust Securities ("ACTS").  Defendants state that up until the filing of plaintiffs' class certification motion, the focus was on common stockholders with no mention of ACTS stockholders.  They assert that ACTS is not common stock and that it is too late to add ACTS purchasers to the class.

Plaintiffs argue that these securities have been part of the case from the beginning.  Plaintiffs cite their first complaint, dated May 17, 2002, which included

14

"securities" that were actively traded on the NYSE, and a July 16, 2002 Motion by Gordon Group for Consolidation, Appointment as Lead Plaintiffs on Behalf of the Preferred Securities Purchaser Class Under Section 21D(a)(3)(B) of the Securities Act of 1934 and Approval of Lead Plaintiffs' Selection of Lead Counsel and Liaison Counsel. However, the court notes that the motion on behalf of the Gordon Group was withdrawn and therefore voluntarily dismissed.

The court agrees with Defendants that purchasers of ACTS are not appropriate Class members. The court finds defendants' assertion that ACTS purchasers are similar to purchasers of Premium Equity Participating Security Units (PEPS Units) persuasive and notes that purchasers of PEPS Units have already been excluded from the class by virtue of this court's decision on an earlier motion to dismiss. As such the Kirschkes, to the extent they owned ACTS, are also not appropriate class representatives.

## CONCLUSION

For the reasons stated, the court hereby conditionally[9] GRANTS plaintiffs' motion for class certification of the following-defined class:

> All persons who purchased CMS common stock during the period of October 25, 2000 through and including May 17, 2002 and who were damaged thereby. Excluded from the class are current and previously named Defendants, the officers and directors of CMS at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which current and previously-named Defendants have or had a controlling interest.

---

[9] This order acknowledges the "court's duty to reassess class certification decisions in light of the case's development," In re Ikon Office Solutions, Inc., 191 F.R.D.457, 463 (E.D. Pa.2000) (citing Barnes v. American Tobacco Co., 161 F.3d 127, 140 (3rd Cir.1998)), and the court notes that class certification is conditional pending judgment.

15

Furthermore, the court will name plaintiffs Andover Brokerage, LLC, Herbert Steiger, Morris L. Cook, and the Louisiana School Employees' Retirement System as Class representatives. The Kirschkes are not named as representatives at this juncture.[10] The court will designate Entwistle & Cappucci LLP and Milberg Weiss Bershad & Schulman LLP as co-Class Counsel, as requested by plaintiffs.

IT IS SO ORDERED.


          S/George Caram Steeh  
          GEORGE CARAM STEEH  
          UNITED STATES DISTRICT JUDGE

Dated: March 24, 2006

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on March 24, 2006, by electronic and/or ordinary mail.

          S/Josephine Chaffee  
          Secretary/Deputy Clerk

---

[10] The court considers the number of class representatives to be sufficient, and in any event, is uncertain whether plaintiffs' request for the Kirschkes to serve as class representatives continues in light of the court's ruling concerning short sellers and ACTS purchasers.

16